## AFFIDAVIT OF J. DENISE FUSARO

I, Jenarita Denise Fusaro, a/k/a J. Denise Fusaro, swear and aver as follows:

1. I have been working as a real estate agent since 2001 and am currently a licensed realtor in the state of Rhode Island and Connecticut. I have been affiliated with Randall, Realtors located at 241 Post Road in Westerly, Rhode Island since 2008. My Rhode Island realtor license number is S28456.

2. On or about October 1, 2017, I was engaged by Helene L. Hardick and her husband, John Hardick (collectively hereinafter "the Hardicks" or "Sellers") to act as their real estate broker for the sale of a single family home located at 4 Gounod Road in Westerly, Rhode Island together with an adjoining undeveloped parcel located at 5 Wagner Road in Westerly, Rhode Island (collectively "Property"). Upon information and belief, the Property is owned by a living trust known as Helene L. Hardick Living Trust.

3. The Property has been listed for sale since October 2017. During the summer months, the Hardicks have rented the Property through Randall, Realtors to various tenants. It is my understanding that the Hardicks reside at 6 Gounod Road in Westerly, Rhode Island, which is adjacent to the Property, during the summer months and that they reside in St. Petersburg, Florida in the winter months.

4. On May 24, 2020, I scheduled two showings for the Property. One showing took place at 12:00 p.m. with Todd Brown and his wife, Ebony Clinton Brown (collectively "Browns"), and their broker, Anthony Lemme of Weichert Realtors-Cress & Company of Westerly, Rhode Island. A second showing took place at 3 p.m. that same

1

day with another couple interested in viewing the Property as potential buyers. At the time of these showings, the Property was listed for sale at the reduced listing price of $569,000.

5. On May 24, 2020, at approximately 2:20 p.m. (one half hour before the second showing), I received an email from Mr. Lemme with an offer from the Browns to purchase the Property for a purchase price of $550,000.

6. Following the previously scheduled second showing the other potential buyer(s) also made an offer to purchase late in the day on May 24.

7. I verbally communicated both offers to the Hardicks in a telephone call in the morning of May 25.

8. During my telephone conversations with the Hardicks on May 25 the Hardicks expressed concern that both offers were below the asking price and that the offers did not account for anticipated summer rental income for the Property. On the other hand, the Hardicks also communicated to me their concern that the rental income was at risk because of the possibility of cancellations due to the COVID-19 pandemic. As a result, the Hardicks authorized me to make a counter-offer on their behalf to the agents for both the Browns and the other potential buyer(s) for the amount of $569,000 with contingencies for a $25,000 deposit and a closing on or before July 15, 2020.

9. I proceeded as authorized on May 25 by contacting both agents and communicated the counter offer to Mr. Lemme. Mr. Lemme called me back a short time later on May 25 to advise that the Browns accepted the counter offer at the

Hardicks' requested price of $569,000. The other potential buyer(s) did not modify their initial offer in response to the counteroffer.

10. I reported the Browns' verbal acceptance of the counteroffer to the Hardicks and asked them if they wanted to proceed with having a formal Purchase & Sale Agreement prepared reflecting the sale terms and conditions with the Browns. The Hardicks instructed me to proceed, so in the normal course I asked Mr. Lemme to prepare the Purchase & Sale Agreement.

11. During the evening of May 25, 2020, I received the proposed Purchase & Sale Agreement for the Property incorporating the terms of the counteroffer from Mr. Lemme and signed by his clients, the Browns (the "PSA"). Later that evening I forwarded the PSA to the Hardicks for their review and signature, the PSA being the first writing regarding the Browns and their offer(s) to purchase which I had provided to the Hardicks.

12. That same evening Helene Hardick called me and indicated the purpose of the call was to discuss the PSA. Her initial comment was to note her name was misspelled on the PSA and I responded this was a typographical error which could be easily corrected. Helene Hardick then referenced one of the buyer's name, Ebony Brown, and asked me whether she was "black". I responded affirmatively.

13. Helene Hardick then expressed her refusal to sell the Property to an African American, generally, and communicated she was, therefore, not willing to proceed with the sale of the Property to the Browns.

14. At that point in the conversation, I told Helene Hardick that I could not continue discussions with Hardicks. I then terminated the telephone call and I have not had any further conversations with the Hardicks since that time.

15. I immediately called the Emma Thompson, the Manager at Randall, Realtors, to report the conversation.

16. The next morning on May 26, 2020, I received a text message from the Hardicks indicating that they were withdrawing the sales listing for the Property. I forwarded the message on to Emma Thompson and later, at her direction, I sent a withdrawal of listing form to the Hardicks by *Authentisign*.

17. The sales listing for the Property was deactivated by Randall, Realtors promptly upon the return of the executed withdrawal of listing form by the Hardicks through *Authentisign*.

18. At no time prior to the comments made by Mrs. Hardick during our last telephone call on May 25, 2020 did the Hardicks make any comment and/or remark to me regarding the race or ethnicity of any potential buyer or any other third party to any matter I was involved with, whether as a contingency to an acceptable offer or otherwise.

19. The foregoing affidavit is based upon my personal knowledge and is true and accurate to the best of my knowledge and ability.

Signed under the penalties of perjury this _22nd_ day of June 2020.

*[signature: Cheryl M. Bernat]*

*[signature: J. Denise Fusaro]*

J. DENISE FUSARO

CHERYL M. BERNAT
Notary Public, State of Rhode Island
My Commission Expires Aug. 15, 2021

4