UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EBONY CLINTON-BROWN and TODD BROWN, | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:20-cv-11694-IT |
| | * | |
| HELENE L. HARDICK and JOHN HARDICK, individually and as trustees of the HELENE L. HARDICK LIVING TRUST, | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

April 15, 2021

TALWANI, D.J.

Defendants Helene and John Hardick ("the Hardicks"), individually and as trustees of

Defendant Helene L. Hardick Living Trust ("the Trust"), move to dismiss the Complaint [#1]

brought by Plaintiffs Ebony Clinton-Brown and Todd Brown ("the Browns") for lack of personal

jurisdiction and improper venue. For the reasons discussed below, the court concludes that it

lacks personal jurisdiction over the Hardicks and that venue is improper. Rather than dismiss the

case outright, however, the court will transfer it to the District of Rhode Island pursuant to its

authority under 28 U.S.C. §§ 1631 and 1406(a).

## I.     Factual Background

The facts, as alleged in the Complaint [#1] and accompanying affidavit, are as follows.

The Hardicks are Florida residents who also have a home in Westerly, Rhode Island. Compl. ¶ 5

[#1]; Fusaro Aff. ¶ 3 [#1-1]. The Trust owns an adjacent home and property in Westerly, Rhode

Island. Fusaro Aff. ¶ 2 [#1-1]. In October 2017, the Hardicks listed the Trust's property for sale

through the Hardick's Rhode Island-based realtor, Denise Fusaro, of Randall, Realtors. Compl. ¶ 8 [#1]; Fusaro Aff. ¶¶ 1-3 [#1-1].

The Browns are residents of Massachusetts. Compl. ¶ 4 [#1]. On May 24, 2020, Fusaro gave the Browns a tour of the property, and the Browns then submitted an offer through their broker, Anthony Lemme, of Weichert Realtors-Cress & Company. Id. at ¶¶ 8-9. The Hardicks, through Fusaro, made a counteroffer, which the Browns, through Lemme, accepted. Id. at ¶¶ 14-16. The Browns then prepared a purchase and sale agreement, which Lemme sent to Fusaro, who sent it on to the Hardicks for review. Id. at ¶¶ 18-19.

On May 25, 2020, Helene Hardick called Fusaro to discuss the purchase and sale agreement. Id. at ¶ 23. During the conversation, Helene Hardick asked Fusaro if one of the buyers was black, and Fusaro answered "yes." Id. at ¶ 25. Helene Hardick then told Fusaro that she refused to sell the property to an African American and was backing out of the deal. Id. at ¶ 26. The next day, the Hardicks sent Fusaro a text message indicating that they were withdrawing the listing. Id. at ¶ 27.

## II.   Procedural Background

The Browns filed this action on September 16, 2020, alleging violations of the Fair Housing Act, 42 U.S.C. § 3604, and Rhode Island law. Compl. 5-9 [#1]. The Hardicks and the Trust returned waivers of service of summons, which state that they "agree to save the expense of serving a summons and complaint in this case" and that such waiver allows them to "keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action" but that they "waive any objections to the absence of a summons or of service." Waivers of Service [#4, #5, #6]. Two attorneys for the Hardicks and the Trust then filed notices of appearance, and a

third requested leave to appear *pro hac vice*, which the court allowed. Not. of Appearance [#7, #8]; Mot. for Leave to Appear *Pro Hac Vice* [#9]; Elec. Order [#10].

On October 27, 2020, the court set a scheduling conference for November 23, 2020, pursuant to Federal Rule of Civil Procedure 16(b) and Local Rule 16.1(f). Notice [#11]. Counsel for the parties met for a discovery conference on November 2, 2020, as required by Federal Rule of Civil Procedure Rule 26(f).

The Hardicks now move to dismiss the <u>Complaint</u> [#1] under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(3) based on improper venue. Mot. to Dismiss [#13]. The Browns oppose dismissal but request that the court transfer venue pursuant to 28 U.S.C. § 1631 should the court determine that it lacks jurisdiction or that venue in Massachusetts is improper. Pls' Opp. 1 [#19].

## III.   Discussion

### A.   *Waiver*

The Browns' first argument in opposition to dismissal is that the Hardicks waived their right to challenge personal jurisdiction and venue. Federal Rule of Civil Procedure 12(h)(1) provides that:

> A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived . . . (B) if it is neither made by motion under [Rule 12] nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

Here, the Hardicks included these challenges in their Rule 12 motion.

The Browns contend that the Hardicks nonetheless waived these defenses by executing waivers of service of summons, filing notices of appearance and a motion for admission *pro hace vice*, and participating in a mandatory Rule 26 planning meeting. But the waiver of service forms make clear that the waiver is only as to objections to the absence of a summons or of service and

3

that the party waiving service retains all objections to the court's jurisdiction and the venue of the action. It is also "well settled that general appearance by a defendant does not constitute a waiver of the defense of lack of jurisdiction over the person." Marcial Ucin, S.A. v. SS Galicia, 723 F.2d 994, 997 (1st Cir. 1983) (citing 2A Moore's Federal Practice (2d Ed.) § 12.12, at 2325, and cases cited at n.17).

Instead, "if defendant appears, a subsequent contest of the court's jurisdiction over the person must be timely." Id. These defenses are thus waived if not raised "in [the defendant's] first defensive move, be it a Rule 12 motion or a responsive pleading." Glater v. Eli Lilly & Co., 712 F.2d 735, 738 (1st Cir. 1983). Here, the objections were timely raised, and the Defendants forfeited no ground by waiving service and cooperating in the orderly case management process.

B.    *Personal Jurisdiction*

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015). Where, as here, the court considers a Rule 12(b)(2) motion without holding an evidentiary hearing, the court applies the "prima facie standard." See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995). To make a prima facie showing of jurisdiction, a plaintiff cannot rest on the pleadings but must "proffer[] evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992). However, "the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." United Elec. Radio and Mach. Workers of America v. 163 Pleasant Street Corp., 987 F.2d 39, 44 (1st Cir. 1993).

"When the district court's *subject-matter* jurisdiction rests wholly or in part on the existence of a federal question, the constitutional limits of the court's *personal* jurisdiction are drawn in the first instance with reference to the due process clause of the [F]ifth [A]mendment," not the Fourteenth Amendment. Lorelei Corp. v. County of Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991) (emphasis in original). The Fifth Amendment "permits a federal court to exercise personal jurisdiction over a defendant in a federal question case if that defendant has sufficient contacts with the United States as a whole." Id. (quoting Whistler Corp. v. Solar Electronics, Inc., 684 F.Supp. 1126, 1128 (D. Mass. 1988) (citing cases)); see also United Electrical Radio and Machine Workers, 960 F.2d at 1085 ("the Constitution requires only that the defendant have the requisite 'minimum contacts' with the United States, rather than with the particular forum state"). Here, the Defendants, who are residents of Florida and who own homes in Florida and Rhode Island, have sufficient contacts with the United States to satisfy this broad standard.

However, there is a statutory limitation on the court's exercise of personal jurisdiction. "Before a federal court may exercise personal jurisdiction over a defendant in a federal question case, there must be authorization for service of summons on the defendant." Pike v. Clinton Fishpacking, Inc., 143 F.Supp.2d 162, 166 (D. Mass. 2001) (citing Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987)). Under Federal Rule of Civil Procedure 4(f), service of process issued by federal courts generally must be confined to "the territorial limits of the state in which the district court is held." Fed. R. Civ. P. 4(f). Absent a federal statute authorizing extraterritorial service of process, Rule 4(e) authorizes service only to the extent permitted by "the law of the state in which the district court is located." Fed. R. Civ. P. 4(e). Where the court's examination of the Fair Housing Act fails to reveal any provision authorizing nationwide service of process, the court turns to Massachusetts law.

In Massachusetts, to prove that a court has jurisdiction over a defendant, the plaintiff "must meet the requirements of both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment." Cossart, 804 F.3d at 18. So, although this is a federal question case, the Fourteenth Amendment "minimum contacts" analysis "acts indirectly 'as a precondition to the exercise of personal jurisdiction.'" Lorelei Corp, 940 F.2d at 720 (quoting Catrone v. Ogden Suffolk Downs, Inc., 647 F.Supp. 850, 855 (D. Mass. 1986)). And unlike many other states, Massachusetts' long-arm statute "is not coextensive with what due process allows." SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 325, 85 N.E.3d 50 (2017). The court therefore begins its analysis with the long-arm statute. See id. ("to avoid unnecessary consideration of constitutional questions, a determination under the long-arm statute is to precede consideration of the constitutional question").

      1.     Massachusetts Long-Arm Statute

The Browns rely only on subsection (a) of the Massachusetts long-arm statute, which permits jurisdiction over a nonresident defendant who "acts directly or by an agent, as to a cause of action . . . arising from the person's (a) transacting any business in the commonwealth." Mass. Gen. Laws ch. 223A, § 3(a). For jurisdiction to lie under this subsection, (1) the defendant or the defendant's agent must have transacted business in Massachusetts, and (2) the plaintiff's claim must have arisen from the transaction of such business. See Exxon Mobil Corp. v. Att'y Gen., 479 Mass. 312, 317, 94 N.E.3d 786 (2018) (quoting Tatro v. Manor Care, Inc., 416 Mass. 763, 767, 625 N.E.2d 549 (1994)).

As to the first element, the language "transacting any business" is to be broadly construed, and the volume of business conducted within the Commonwealth need not be substantial. See Nova Biomedical Corp. v. Moller, 629 F.2d 190, 193 (1st Cir. 1980). However,

the requirement "is not without some bite." Id. at 194. The conduct must be "aimed squarely at Massachusetts targets" to be considered transaction of business under subsection (a). Gunner v. Elmwood Dodge, Inc., 24 Mass. App. Ct. 96, 99, 506 N.E.2d 175 (1987). Where the alleged conduct is advertising, advertisements that happen to circulate in Massachusetts and to be seen in Massachusetts are insufficient; they must be purposefully directed at residents of the Commonwealth. Id. at 176-77.

The Browns argue that the Hardicks, by engaging Fusaro to sell the Trust's property, transacted business in Massachusetts. Pls' Opp. 2 [#19]. They contend that Fusaro is associated with Randall, Realtors, and that Randall, Realtors is headquartered in Massachusetts. Id. They assert further that Randall, Realtors employs real estate agents in the Commonwealth and advertises properties from across its offices on its website. Id. In effect, the Brown's argument is that the Hardick's realtor's company's advertisements can be imputed to the Hardicks. Id. The evidence is somewhat murkier; for example, the exhibit described by the Browns' counsel as a copy of the Randall, Realtors landing webpage showing its Headquarters Location at 133 Rt. 6A, Sandwich, MA 02563 also states that "Randall Realtors is one of Southern New England's leading real estate firms with offices and agents covering RI and Eastern CT," and lists its "coverage area" as Connecticut and Rhode Island. Ex. A [#19-1].

But even assuming that the Browns could show that Fusaro worked for a company headquartered in Massachusetts, they have offered little evidence that the company's online advertisements are actively targeted at Massachusetts residents rather than passively available to anyone who happens upon the website. See Gunner, 24 Mass. App. Ct. at 99; Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997) (non-resident's contacts with forum state must be deliberate, not merely fortuitous). Moreover, even if Randall, Realtors targets

Massachusetts in some of its advertising (the Browns point to Homes Magazine, a Randall,

Realtors publication, which *is* directed, in part, to Massachusetts residents and includes

properties located in Rhode Island, Pls' Reply 3-4 [#32]), the Browns have not shown the second

element required to demonstrate that their injury arose from such advertising. The "arising from"

language establishes a "but for" test under which under which "a claim arises from a defendant's

transaction of business in the forum State if the claim was made possible by, or lies in the wake

of, the transaction of business in the forum State." Tatro, 416 Mass. at 771. Even if Randall,

Realtors advertises *some* Rhode Island properties directly to Massachusetts residents, there is no

evidence in the record that *this* property was so advertised. Nor have the Browns shown that their

viewing of a targeted advertisement led them to schedule a tour of the property. Indeed, nothing

in the record ties Randall, Realtors' advertising in Massachusetts to the transaction at issue here.

The court therefore concludes that the Browns have not established jurisdiction under subsection

(a) of the long-arm statute.

       2.     Due Process

     Given the court's conclusion that the Browns have not carried their burden of proving

that the Hardicks' conduct brings them within the long-arm statute, it need not reach the

constitutional due process issue. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). It

should be clear, however, that the Browns have not demonstrated that the Hardicks "purposefully

availed" themselves of the privilege of conducting business with the Commonwealth, as

necessary under the Fourteenth Amendment. See Burger King Corp. v. Rudzewicz, 471 U.S.

462, 475 (1985).

C.      *Venue*

Furthermore, venue is not proper in this court. Venue refers to the place where a lawsuit should be brought and is appropriate in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). If the case does not fall into one of these categories, venue is improper and "the case must be dismissed or transferred under § 1406(a)." Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S 49, 56 (2013). In general, "the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place for trial." Leroy v. Great Western United Corp., 443 U.S. 173, 183–84 (1979) (emphasis in original).

In determining venue, the court looks "not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim." Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001). This is a "holistic view of the acts underlying a claim." Id. at 43, n.6. Here, the Browns traveled to Rhode Island to view the property, used a Rhode Island broker who communicated with the Hardicks' Rhode Island real estate agent, who in turn took direction from the Hardicks in Rhode Island. While the Browns may have been in Massachusetts when they made their offer and when they received the news from Rhode Island that the Hardicks would not sell the Rhode Island property to them for discriminatory reasons,

Massachusetts is not where a substantial part of the wrongful acts giving rise to the action occurred.

      D.    *Transfer*

Having concluded that this court lacks personal jurisdiction over the Hardicks and that venue is improper, the court next considers whether to dismiss the case or transfer it pursuant to 28 U.S.C. § 1631 and/or 28 U.S.C. § 1406(a).

Section 1631 "establish[es] a rebuttable presumption in favor of transfer" and this presumption is rebutted only if the transfer is "not in the interest of justice." See Fed. Home Loan Bank of Bos. v. Moody's Corp., 821 F.3d 102, 119 (1st Cir. 2016), abrogated on other grounds by Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553 (2017). Transfer where venue is improper is also appropriate under section 1406(a) when it is "in the interest of justice."

In making such a determination, the court considers (1) whether the action could have been brought in another federal court, (2) whether a limitations period has run that would preclude filing in the correct court, and (3) whether the case is frivolous or brought in bad faith. Britell v. United States, 318 F.3d 70, 74-75 (1st Cir. 2003). None of those considerations weighs against transfer in this case. First, the Browns could have filed this action in Rhode Island where the alleged injury occurred, and they should be permitted to pursue the merits of their case in an appropriate jurisdiction. Second, the court is not aware of any limitations that would prevent the Browns from filing their claims in Rhode Island. And third, there is no evidence that the Browns acted in bad faith when filing their complaint in this district. Given that the purpose and policy underlying these sections is to ensure that cases will be resolved on the merits when practicable, this court concludes that transfer is appropriate.

**IV.      Conclusion**

For the foregoing reasons, the court GRANTS the Hardicks' <u>Motion to Dismiss</u> [#13] in part, finding that the court lacks personal jurisdiction over the Defendants and that venue is improper but that the case should be transferred rather than dismissed. The court directs the clerk to transfer the case to the District of Rhode Island pursuant to 28 U.S.C. §§ 1631 and 1406(a).

IT IS SO ORDERED.

April 15, 2021                                                /s/ Indira Talwani
                                                             United States District Judge